# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA D. NUNEZ, | 1:05cv0024 DLB |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff Maria D. Nunez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application for supplemental security income on September 10, 1998, alleging disability since September 1, 1998, due to discogenic back disease, depression,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 14, 2006, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

fibromyalgia, asthma, obesity, and memory loss.  AR 122-125, 131.  After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 105-109, 111-114, 115.  On February 24, 2000, ALJ Rocklin D. Lyons held a hearing.  AR 907-936.  On May 25, 2000, ALJ Lyons found that Plaintiff was not disabled.  AR 686-697.  On October 10, 2001, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ.  AR 706-709.

Plaintiff filed another application for benefits on September 29, 2000.  AR 717-730. However, the ALJ found that common issues existed and consolidated the application with the September 10, 1998, application.  AR 20.

The ALJ held a supplemental hearing on May 7, 2002.  AR 937-961.  On April 10, 2003, he determined that Plaintiff was not disabled.  AR 16-38.  The Appeals Council denied review on November 19, 2004.  AR 9-11.

Plaintiff filed a previous application on April 10, 1997.  The application was denied initially and on reconsideration.  AR 19.

<u>Hearing Testimony</u>

Pursuant to the Appeals Council remand, ALJ Lyons held a supplemental hearing on May 7, 2002.  Plaintiff appeared with her attorney, Melissa Proudian.  AR 937.

Plaintiff testified that she was 41 years old and had two years of a college education.  AR 940.  She is not married and lives with family.  AR 940.  She is currently selling products for Avon, and makes $50 or less per month.  AR 942.  She tried working prior to that, but was let go after three weeks because she could not do the required lifting.  AR 942.

Plaintiff testified that her condition has gotten worse since the last hearing.  Her legs have gotten worse and she sometimes has to use her cane more than before.  AR 946.  She is still going to mental health about once a month.  She receives medications and counseling, which she thinks helps.  AR 946.  She is not currently seeing a doctor for her physical problems because she doesn't have insurance.  AR 947.

Plaintiff has been using a cane on and off since her operation.  AR 947.  She spends her time knitting, watching television, sleeping and trying to help around the house by washing

1   dishes.  AR 948.  Her children visit her and she sometimes babysits her grandchildren.  AR 948.

2   She no longer attends church or social activities.  AR 948.  She sees her friends once or twice a

3   week, and they just sit and talk.  AR 955.  Plaintiff drives about three times per week.  AR 956.

4      When questioned by her attorney, Plaintiff explained that she has pain primarily in her

5   low back and left leg.  AR 949.  She has pain everyday and takes medication.  AR 949.  The

6   medication does not completely relieve her pain but helps a little.  AR 949-950.  The medication

7   makes her groggy and very sleepy.  AR 950.  She has had physical therapy for her back, but it

8   only helped a little.  AR 950.  A TENS unit has been prescribed but it did not help.  AR 950-951.

9   She wears a back brace when he is in a lot of pain and last used it a couple of months ago.  AR

10  951. She has pain while sitting and thought that she could sit about 30 minutes before needing to

11  get up to relieve the pressure.  AR 952.  She could stand in one place for about 30 minutes to one

12  hour before needing to move around or lay down.  AR 952.  She thought she could walk a couple

13  of blocks before having to stop.  AR 952.

14     She limps with her left leg because it is not strong enough to take her full weight.  AR

15  952-953.  Plaintiff thought she could lift about 15-20 pounds.  AR 953.  She can bathe and dress

16  herself, and make herself food.  AR 955.  She cries everyday because of her depression.  AR 956.

17     Plaintiff described her mood as "not very good" and indicated that she has suicidal

18  thoughts very often.  AR 953-954.  The medication has helped her have less suicidal thoughts

19  and has made the voices in her head go away.  AR 954.  Her ability to concentrate and focus are

20  not very good.  AR 954.

21     Vocational Expert Judith Najarian did not appear at the hearing, but submitted answers to

22  interrogatories posed by the ALJ.  AR 768-771.  Plaintiff has past relevant work as a home health

23  aide and student aide II/clerical worker.  AR 769.  The first hypothetical described a person of

24  Plaintiff's age, education and work history, who could lift and carry 25 pounds occasionally and

25  10 pounds frequently, stand/walk/sit for six hours in an eight hour day, occasionally bend, stoop,

26  kneel, crouch, and reach overhead.  AR 770.  This person is also limited to simple one-to-two

27  step tasks.  AR 770.  This person could perform Plaintiff's past relevant work as well as general

28  clerk, unit clerk, blood donor unit specialist, license clerk and process server.  AR 769.

<u>Medical Record</u>

Plaintiff underwent a lumbar spine laminectomy at L5-S1 in March 1993.  AR 231.  She received treatment with prescription pain relievers and injections.  AR 207-234.

In February 1997, Plaintiff's fibromyalgia was under good control, but she indicated that her left shoulder pain continued.  AR 255.  A prior left shoulder arthogram was negative.  AR 279.

In March 1997, Plaintiff underwent a psychological evaluation.  Her IQ was 102, but she had numerous complaints of pain.  AR 239-240.  Her academics tested very low, causing the examiner to rule out additional formal training and question her past formal training.  AR 239.  The examiner also questioned whether Plaintiff was exaggerating her pain.  AR 239-240.

In May 1997, Plaintiff was diagnosed with chronic lower back strain, chronic cervical and shoulder girdle strain, and a history of lower back surgery with good results.  AR 237-238.  She was precluded from activities that required heavy lifting, repeated bending and stooping, and was urged to return to the work environment.  Her prognosis was fair.  AR 238.

Plaintiff underwent a psychiatric examination on July 13, 1997.  Plaintiff had difficulties in attention and concentration, and her memory was grossly impaired.  Richard Hicks, M.D., diagnosed an organic mental disorder and a mild personality disorder.  AR 287-292.

Plaintiff received treatment from Tulare County Mental Health in July 1997.  She was diagnosed with major depressive disorder, single episode with melancholia.  Michael Barnett, M.D., prescribed a sedating anti-depressant that he thought might also help with her fibromyalgia, disc pain and asthma.  AR 304-306.

On July 21, 1997, State Agency physician Edward I. Cherniss, M.D., completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could occasionally lift and/or carry 20 pounds, 10 pounds frequently, stand and/or walk about six hours in an eight hour day, and sit about six hours in an eight hour day.  Plaintiff could occasionally stoop and had to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.  AR 313-320.

A July 25, 1997, x-ray of Plaintiff's lumbosacral spine revealed a mild curvature of the lumbar spine towards the left side.  AR 322.

On August 14, 1997, Dr. Cherniss completed a Mental Residual Functional Capacity Assessment form.  He opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but could understand and carry out instructions for simple, repetitive tasks.  She could concentrate adequately, relate appropriately to others, and adapt to the requirements of daily work.  AR 323-325.  This opinion was affirmed in November 1997.  AR 325.

In September 1997, Plaintiff indicated that she had not felt suicidal since July.  AR 513. On October 15, 1997, she saw psychiatrist James E. Yates, M.D.  He indicated that Plaintiff had a personality disorder, and questioned her compliance with medication and treatment.  He indicated that Plaintiff should be seen by a social worker until she feels more comfortable with the psychiatrist.  AR 508-509.

In October 1997, Plaintiff saw treating physician Glenn Kissinger, M.D.  She complained of body aches, sore throat and cough.  Dr. Kissinger diagnosed fibromyalgia.  AR 447.

It was noted in November 1997 that Plaintiff recently received her degree from Kings River College, which conflicted with the vocational rehabilitation counselor's indication that Plaintiff may have organic brain damage resulting from her fibromyalgia.  AR 498.

A CT scan of Plaintiff's lumbar spine in December 1997 revealed broad based disc bulge at L4-L5, broad based disc bulge at L5-S1, and evidence of L5 laminectomy.  AR 439.

In January 1998, Plaintiff told Dr. Kissinger that her back pain was okay and that she was able to cope with it.  She was doing her exercise program.  AR 437.

Plaintiff began physical therapy in March 1998.  AR 541.

Plaintiff was hospitalized in April 1998 for treatment of pyelonephritis.  Tests indicated E. coli infection.  She was treated with antibiotics and released after improvement.  AR 356-357.

Plaintiff began receiving treatment from Dr. William Ziering's Allergy and Respiratory Center in March 1998.  In July 1998, Plaintiff was diagnosed with asthma and prescribed

1  inhalers.  AR 368.  A CT scan of the sinuses was normal.  AR 369.  Pulmonary function tests

2  from March, April and June1998,were all normal.  AR 378, 384, 385, 387, 389, 391.

3        Plaintiff complained that her back pain was worsening in June 1998, and that she had

4  pain down both legs.  AR 427.  Plaintiff complained of pain with any back motion and her

5  reflexes were within normal limits.  AR 427.  In July, Plaintiff indicated that after she recently

6  went dancing, her back pain increased.  AR 426.  By August, she was walking with a cane.  AR

7  422.  In September, Dr. Kissinger indicated that she was unable to work.  AR 420.

8        Plaintiff was discharged from Tulare County Mental Health in July 1998.  She was

9  diagnosed with major depressive disorder with moderate improvement.  Plaintiff missed several

10  scheduled appointments and was unable to continue due to her health problems and severe

11  back/immobility problems.  AR 494-495.

12        In September 1998, Plaintiff underwent arthroscopy surgery on her right

13  temporomendibular joint.  Fibrous adhesions were removed and there were no postoperative

14  complications.  AR 403-404.  A pre-operative ECG was normal and a chest x-ray was normal.

15  AR 407-409.

16        Plaintiff was discharged from physical therapy on September 30, 1998, because she failed

17  to return after her last visit.  There was a slight improvement in mobility and function.  AR 538.

18        On October 7, 1998, Plaintiff returned to Dr. Kissinger and complained of back pain.  He

19  diagnosed chronic pain, fibromyalgia and depression.  AR 418.  He also referred her to a pain

20  clinic.  AR 418.  Pulmonary testing performed in October and November was normal.  AR 531,

21  534.

22        In November, Plaintiff indicated that Percocet helped somewhat but that she still had pain

23  with right leg radiculopthy.  Dr. Kissinger refilled her medications.  AR 415.

24        In December 1998, Dr. Kissinger again indicated that Plaintiff suffered from chronic back

25  pain.  AR 413.  A December 2, 1998, x-ray of Plaintiff's lumbar spine revealed mild posterior

26  disc space narrowing at L3-4 and L4-5, and mild facet osteoarthritis at L5-S1.  AR 581.  On

27  December 19, 1998, Dr. Kissinger wrote a letter indicating that chronic back pain prevented

28  Plaintiff from working in any meaningful employment.  AR 577.

On December 22, 1998, Plaintiff saw Michael S. Barnett, M.D., for a psychiatric evaluation.  Plaintiff indicated that she tried to kill herself twice in the past year because of the pain.  Upon mental status examination, Plaintiff was tearful, emotional, depressed, and in mild to moderate psychic distress.  Dr. Barnett opined that Plaintiff was suffering from chronic post traumatic stress disorder and dysthymia.  He suggested antidepressants and indicated that her current symptoms would interfere with ability to sustain herself in the work environment.  Nonetheless, he opined that Plaintiff could follow simple one or two step tasks, and relate to peers, supervisors and customers.  However, her fatigue and irritability would make it difficult for her to manage the stress of an eight hour work day.  AR 457-459.

Also on December 22, 1998, Plaintiff saw Zaky Z. Moussa, M.D., for an internal medicine examination.  She complained of back pains, difficulty walking and asthma.  Upon examination, she was in distress from the pain and had difficulty moving from the chair to the examining table.  Deep tendon reflex and motor power was diminished on the left side.  She was unable to stand or bend over to any degree because of the pain.  Dr. Moussa diagnosed lumbar radiculopathy resulting from disc disease with previous laminectomy with neurological deficits of the left side weakness of the lower limb, and asthma.  AR 460-461.  He indicated that Plaintiff would be under disability until further studies could be completed.

Plaintiff returned to Dr. Kissinger on January 6, 1999, and indicated that her pain was controlled.  AR 576.  On January 13, 1999, however, he diagnosed her with sciatica.  AR 575.

On January 13, 1999, State Agency physician Evangeline Murillo, M.D, completed a Psychiatric Review Technique Form.  She opined that Plaintiff had slight restrictions in activities of daily living and maintaining social functioning.  She had seldom deficiencies of concentration, persistence or pace.  She opined that despite Plaintiff's long history of affective mood disorder, she could perform simple, repetitive tasks.  AR 463-473.

Also on January 13, 1999, Dr. Murillo completed a Mental Residual Functional Capacity Assessment form.  She opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but could understand and carry out instructions for

simple, repetitive tasks despite her allegations of depression.  She would be able to interact and adapt.  AR 486-488.  This opinion was affirmed on July 20, 1999.  AR 488.

On February 3, 1999, State Agency physician Willard J. Wisehart, M.D,, completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could occasionally lift and/or carry 50 pounds, 25 pounds frequently, stand and/or walk about six hours in an eight hour day, and sit about six hours in an eight hour day.  She had no further limitations. AR 475-482.  This opinion was affirmed on July 20, 1999.  AR 482.

On March 4, 1999, Plaintiff complained of persistent pain to Dr. Kissinger, and her Percocet was refilled.  AR 572.

Plaintiff presented to the emergency room on May 8, 1999, with complaints of back pain. She was diagnosed with lumbosacral back pain and given pain medications.  AR 485.

Pulmonary testing in June and July 1999, was normal.  AR 520, 522, 524.  In July, Dr. Kissinger diagnosed Plaintiff with asthma and anxiety.  AR 519.  Pulmonary testing in August was normal.  AR 516, 518.  On August 2, 1999, Dr. Kissinger indicated that Plaintiff was improving.  AR 517.  However, on August 25, Dr. Kissinger indicated that Plaintiff was unable to sit, and on August 30, he indicated that Plaintiff was in severe pain from sciatica.  AR 515, 564.

X-rays of Plaintiff's lumbosacral spine taken on September 1, 1999, revealed status post left hemi-laminectomy at L5 with narrowing of the L5-S1 interspace.  There was no evidence of spinal stenosis.  AR 560.  X-rays taken on September 19, 1999, revealed minimal degenerative osteoarthritis of the L5 facet and Schmorl's nodes at L1 and L2.  AR 559.

Plaintiff was admitted to the hospital for treatment of low back pain on September 20, 1999.  AR 623.  Plaintiff underwent a lumbar laminectomy and L5 diskectomy on September 21, 1999.  AR 636-637.  Claimant was discharged as improved and was to receive six weeks of disability.  AR 588-589.  During a follow up with Dr. Kissinger on October 21, 1999, Plaintiff indicated that she had no back pain.  He indicated that she could not work for sixth months, at which time could start training.  AR 557.

1 | _____Plaintiff began physical therapy in October 1999.  AR 780.  On November 17, 1999, she
2 | was instructed to avoid activities such as lifting her grandchildren.  AR 779.

3 | _____In November and December 1999, Plaintiff complained of headaches, which were
4 | diagnosed as tension headaches and treated with medication.  AR 790-791.

5 | Plaintiff continued complaining of back pain in February 2000 and she was prescribed
6 | Darvocet.  AR 787.  She also complained of depression for which she was given samples of
7 | Zoloft.  AR 787.  In April 2000, Plaintiff indicated that her back pain was so bad that she could
8 | not get out of her wheelchair.  AR 786.  She was prescribed Buspar.  AR 786.  One week later,
9 | her back felt better and she was walking with a cane.  AR 785.

10 | _____On May 25, 2000, Plaintiff received instruction in using a TENS unit.  AR 777.

11 | _____In September 2000, Plaintiff was able to walk but had subjective pain and radiculopathy
12 | down her leg.  AR 783.

13 | In June 2000, Plaintiff contacted Tulare County Mental Health and reported that her
14 | problems were overwhelming her.  She was advised to call her doctor.  AR 878.

15 | Plaintiff was seen at Tulare County Mental Health in September and November 2000, for
16 | treatment of depression.  AR 840-844.

17 | Plaintiff saw Jagvinder Singh, M.D., for an internal medicine evaluation on December 9,
18 | 2000.  She complained of low back pain, fibromyalgia, asthma and depression.  She indicated
19 | that she had no problems dressing, bathing and grooming herself.  She also did some housework.
20 | She had no problems walking to the examination room but had problems lying on her back.  She
21 | was not using an assistive device.  Examination revealed positive paravertebral muscle spasms,
22 | 16 trigger points, and tenderness in her lower back.  He diagnosed low back pain, fibromyalgia, a
23 | history of asthma and depression.  He opined that Plaintiff could stand for two hours during an
24 | eight hour workday and could sit for two hours.  She could lift and carry 10 pounds occasionally
25 | and 10 pounds frequently.  She would have problems in bending, stooping, crouching, kneeling,
26 | balancing, climbing and pulling.  She should avoid working at extremes of temperatures and at
27 | heights.  AR 792-795.

28 |

On December 28, 2000, Plaintiff was evaluated by Dr. Barnett.  After mental status examination, Dr. Barnett indicated that for a person "with an AA degree, Ms. Nunez's mental status exam performance and presentation are very poor and limited."  He opined that Plaintiff was in need of a sedating antidepressant.  He diagnosed dysthymia, and chronic post traumatic stress disorder.  He opined that she would have difficulty working, but could understand, carry out and remember simple instructions.  She would be unable to respond appropriately to coworkers, supervisors and the public, and would be unable to respond to usual work situations, stressors or changes in an appropriate fashion.  She would be unable to work an eight hour day, attend work regularly and perform work duties without special or additional supervision.  Her prognosis was guarded.  AR 796-798.

Plaintiff was seen at the Dinuba Health Center on January 2, 2001.  She reported that she had been unemployed since September 18, 1999.  She was in no acute distress, but had limited range of motion due to complaints of pain.  She had a lot of difficulty moving on the exam table.  Plaintiff was diagnosed with low back pain.  AR 801.

State Agency physician Sadda Reddy, M.D., completed a Physical Residual Functional Capacity Assessment form on February 2, 2001.  Dr. Reddy opined that Plaintiff could occasionally lift and/or carry 10 pounds, 10 pounds frequently, stand and/or walk at least two hours in an eight hour day, and sit about six hours in an eight hour day.  She was limited in pushing and pulling with her upper extremities due to back pain.  AR 803.  She could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds.  She could occasionally balance, stoop, kneel, crouch, and crawl.  She had to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and had to avoid working at unprotected heights.  AR 802-809.  This opinion was affirmed on May 4, 2001.  AR 809.

Also on February 2, 2001, Dr. Reddy completed a Mental Residual Functional Capacity Assessment form.  Dr. Reddy opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but could remember and understand to perform simple, repetitive tasks on a sustained basis.  She could maintain attention and

1 concentration for at least two hour segments, relate adequately to others, and adapt to work

2 situations.  AR 814-816.  This opinion was affirmed on May 3, 2001.  AR 818.

3        Plaintiff was seen at Tulare County Mental Health on February 12, 2001.  She requested a

4 medication change.  She was diagnosed with major depressive disorder, stable.  Her medications

5 were altered and she was advised to attend therapy.  AR 838.

6        Plaintiff returned to Tulare County Mental Health on February 20, 2001.  She had

7 difficulty walking because of severe lumbosacral pain.  She was assessed with depressive

8 disorder, history of bulimia nervosa, asthma and fibromyalgia.  AR 837.  Her medications were

9 continued and one was increased.  AR 837.

10        On April 23, 2001, Plaintiff was seen at Tulare County Mental Health for follow up

11 treatment.  She was responding well on medications, but stated that she was sleeping too long.

12 Her mood was euthymic and her affect was pleasant, bright and appropriate.  Her insight and

13 judgment were good.  Andrew Zabiega, M.D., assessed major depressive disorder and adjusted

14 her medications.  AR 870.

15        Plaintiff sought treatment for low back pain and left ankle pain on June 8, 2001.  Range

16 of motion in her back was limited secondary to complaints of pain.  Her legs were weak,

17 although she had a good gait and no limping or guarding.  Plaintiff requested medication for her

18 back pain and indicated that her pain is keeping her from engaging in her daily activities.

19 Plaintiff was prescribed Ibuprofen.  AR 863.

20        On October 29, 2001, Plaintiff saw Hoang Tieu, M.D., at Tulare County Mental Health.

21 She requested medication to help her sleep.  She was calm and described her mood as okay.  Her

22 affect was appropriate.  Dr. Tieu assessed major depressive disorder, recurrent, severe, without

23 psychotic features, and bulimia nervosa.  He added a medication to help her sleep and continued

24 her other medications.  AR 864.

25        On January 3, 2002, Plaintiff saw Richard Engeln, Ph.D., for a psychological evaluation.

26 She was functioning in the mid borderline range of intelligence both verbally and visually.  There

27 was no evidence of any mental or emotional illness.  She was diagnosed with adjustment

28 response to changes in medical-physical status related to her past back injury, with some

histrionic overlay to that issue.  Dr. Engeln concluded that Plaintiff had adequate concentration, verbal, cognitive and social skills for job adjustment where instructions were presented unidimensionally and simple, with normal supervision.  AR 854-857.

_____Plaintiff saw Dr. Murillo on January 11, 2002, and indicated that the medications were helping, but not too much.  Dr. Murillo opined that Plaintiff was responding fairly to treatment and adjusted her medications.  AR 894.

_____Plaintiff returned to Dr. Murillo on February 28, 2002.  Plaintiff's affect was brighter and her mood was less depressed.  Dr. Murillo indicated that Plaintiff was stable and responding well with her medication.  Dr. Murillo adjusted her medications.  AR 893.

On June 22, 2002, Plaintiff saw Juliane Tran, M.D., for an orthopedic evaluation.  Her chief complaint was back pain and she indicated that she could not perform her daily activities.  She had pain in her back and shoulder upon range of motion testing.  Dr. Tran diagnosed back pain, most likely from right L5-S1 radiculopathy, and shoulder pain, probably from bicipital head tendinitis.  Dr. Tran opined that Plaintiff could not lift more than 25 pounds occasionally and 10 pounds occasionally, could not perform activities involving frequent bending, stooping, kneeling, or crouching.  She could not perform activities involving overhead reaching.  She had no further restrictions.  AR 898-900.

_____ALJ's Findings

_____The ALJ determined that Plaintiff had the severe impairments of status post two lumbar spine surgeries with residual back pain, bicipital head tendinitis with right shoulder pain, and depression.  AR 21.  The ALJ further found that Plaintiff's subjective complaints were not totally credible and were only partially supported by the substantial medical evidence.  AR 28.  Plaintiff retained the residual functional capacity ("RFC") to lift and carry 25 pounds frequently, 10 pounds occasionally, stand/walk/sit for six hours in an eight hour day, and occasionally bend, stoop, kneel, and crouch and reach overhead.  Plaintiff was limited to simple one-to-two step tasks.  AR 35. Based on this RFC and vocational questions posed to the vocational expert, the ALJ concluded that Plaintiff could return to her past relevant work as a student aide II/clerical worker.  AR 35.  Alternatively, assuming that Plaintiff could not perform her past relevant work,

1  the ALJ used Medical-Vocational Rule 202.21 as a framework and determined that Plaintiff was

2  not disabled.  AR 36.

3  ## SCOPE OF REVIEW

4  Congress has provided a limited scope of judicial review of the Commissioner's decision

5  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

6  the Court must determine whether the decision of the Commissioner is supported by substantial

7  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

8  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

9  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

10 reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

11 401.  The record as a whole must be considered, weighing both the evidence that supports and

12 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

13 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

14 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

15 This Court must uphold the Commissioner's determination that the claimant is not disabled if the

16 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

17 substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

18 Cir. 1987).

19 ## REVIEW

20 In order to qualify for benefits, a claimant must establish that he is unable to engage in

21 substantial gainful activity due to a medically determinable physical or mental impairment which

22 has lasted or can be expected to last for a continuous period of not less than 12 months.  42

23 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

24 such severity that he is not only unable to do her previous work, but cannot, considering his age,

25 education, and work experience, engage in any other kind of substantial gainful work which

26 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

27 The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

28 Cir. 1990).

1    In an effort to achieve uniformity of decisions, the Commissioner has promulgated

2    regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

3    C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3]  Applying this process in this case, the ALJ

4    found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

5    his disability; (2) has an impairment or a combination of impairments that is considered "severe"

6    (status post two lumbar spine surgeries with residual back pain, bicipital head tendinitis with

7    right shoulder pain, and depression) based on the requirements in the Regulations (20 CFR §§

8    416.920(b)); (3) does not have an impairment or combination of impairments which meets or

9    equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can

10   perform her past relevant work as a student aide II/clerical worker; or alternatively, (5) retains the

11   RFC to perform a wide range of light work.  AR 36-37.

12   Here, Plaintiff argues that (1) she did not have past relevant work as a student aide

13   II/clerical worker; (2) the ALJ improperly relied on the Medical-Vocational Guidelines

14   ("Grids"); (3) the ALJ improperly relied on SSR 85-15; (4) substantial evidence does not support

15   the ALJ's step five decision; (5) work does not exist in significant numbers.

16                                      **DISCUSSION**

17   A.    Plaintiff's Past Relevant Work

18   Plaintiff contends that substantial evidence does not support the ALJ's finding that she

19   could perform her past relevant work ("PRW") as a student aide II/clerical worker. Specifically,

20   she argues that her PRW does not qualify as substantial gainful activity and that she could not

21   work as a student aide II give the ALJ's RFC finding.

22   Plaintiff contends that she did not earn enough as a student aide II for the work to be

23   considered substantial gainful activity.  Defendant concedes that this work was not substantial

24   gainful activity and therefore concedes that this work was not PRW.

25   At step five, the ALJ relied on the VE testimony and found that Plaintiff was capable of

26   making an adjustment to other clerk positions, including a blood donor unit specialist.  AR 35.

27

28        [3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

                                            14

1    While this may often render any error harmless, this is not such a situation.  As discussed below,

2    the ALJ's step five finding was not supported by substantial evidence.

3          Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

4    power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

5    or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

6    In social security cases, the decision to remand to the Commissioner for further proceedings or

7    simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

8    599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

9    administrative proceedings, a social security case should be remanded.  Where, however, a

10   rehearing would simply delay receipt of benefits, reversal and an award of benefits is

11   appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

12   F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

13   useful purpose would be served by further administrative proceedings, or where the record has

14   been thoroughly developed.").

15         The Court finds that remand is proper.  On remand, the ALJ must analyze the step four

16   finding in light of Commissioner's concession that Plaintiff's work as a student aide II was not

17   substantial gainful activity.

18   B.    Reliance on the Grids

19         Plaintiff argues that the ALJ should have taken VE testimony at step five because of the

20   finding that Plaintiff's depression was severe.

21         In general, where a claimant suffers only from exertional limitations, the ALJ may apply

22   the Grids at step five to match the claimant with the appropriate work.  *Reddick v. Chater*, 157

23   F.3d 715, 729 (9th Cir. 1998).  The ALJ may apply the Grids in lieu of taking VE testimony only

24   when the Grids accurately and completely describe the claimant's abilities and limitations.  *Id.*

25   (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).  If a claimant's non-exertional

26   limitations "significantly limit the range of work" he can perform, mechanical application of the

27   grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs

28   existed in the national economy that the claimant could perform.  *Desrosiers v. Secretary of*

1  *Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988).  The determination of whether

2  a non-exertional limitation significantly limits the range of work the claimant is able to perform

3  is left to the ALJ.  *Id.*

4      The ALJ found Plaintiff's depression to be "severe," but explained that despite this

5  finding, "the medical evidence does not convincingly show that Plaintiff cannot function socially

6  or occupationally" as she is only mildly to moderately affected.  AR 33.  Given the overall

7  evidence, the ALJ determined that Plaintiff was capable of simple tasking, i.e., performing one-

8  to-two step job instructions.  AR 33, 35.

9      Contrary to Plaintiff's suggestion, however, the ALJ did utilize the VE in determining

10  Plaintiff's ability to perform work.  The ALJ submitted interrogatories to the VE which set forth

11  Plaintiff's RFC, including her limitation to performing simple one-to-two step tasks.  AR 770.  In

12  his decision, the ALJ cited the VE's opinion that Plaintiff could make a vocational adjustment to

13  other clerk positions, including blood donor unit specialist.  AR 35, 37.  Accordingly, the ALJ

14  did not rely "wholly" on the Grids in determining whether Plaintiff could perform other jobs.

15      In any event, VE testimony is required only where non-exertional limitations

16  "significantly limit the range of work" the claimant can perform.  *Id.*  Here, the ALJ found that

17  Plaintiff's depression, although a severe limitation, did not result in more than mild or moderate

18  restrictions.  AR 33.  He specifically determined that Plaintiff's nonexertional limitations did not

19  significantly erode the scope of work available to Plaintiff at the light level of exertion.  AR 39.

20  This determination was within the ALJ's discretion.  *Id.*

21      Insofar as Plaintiff contends that the ALJ erroneously relied on Grid Rule 202.21, her

22  argument is without merit.  She argues that the ALJ specifically defined simple tasks as those

23  limited to one-to-two step tasks, and questions whether this definition is more narrow than the

24  definition of "simple tasks."  She contends that a VE was needed to make this determination, and

25  to determine whether a limitation to one-to-two step tasks significantly erodes the unskilled

26  occupational base.  As explained above, however, the hypothetical posed to the VE specifically

27  included the limitation to one-to-two step tasks.  AR 770.

28

1  C.    SSR 85-15

2  _____In a similar argument, Plaintiff contends that the ALJ erroneously relied on SSR 85-15

3  because the Ninth Circuit has determined that SSR 85-15 does not apply in cases involving both

4  exertional and non-exertional limitations.

5  Plaintiff is correct that SSR 85-15 provides "guidance only for cases in which the

6  claimant asserts 'solely nonexertional impairments.'" *Sandgathe v. Chater*, 108 F.3d 978, 981

7  (9th Cir. 1997); *Roberts v. Shalala,* 66 F.3d 179, 183 (9th Cir. 1995).

8  The ALJ found that Plaintiff had both exertional and nonexertional impairments.

9  However, as explained above, the ALJ both cited VE testimony and as an alternative, determined

10  that Plaintiff's nonexertional limitation to simple one-to-two step tasks did not significantly

11  erode the occupational base, making any citation to SSR 85-15 harmless. *Batson v. Comm'r Soc.*

12  *Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the

13  validity of the ALJ's ultimate conclusion).

14  D.    Step Five Decision

15  _____Next, Plaintiff contends that the step five decision was not supported by substantial

16  evidence because (1) Plaintiff never acquired the skills necessary to perform the positions

17  identified by the VE; (2) the position of blood donor unit specialist is beyond Plaintiff's RFC;

18  and (3) the VE did not break down the number of positions available for each occupational title.

19  _____*Transferrable Skills*

20  Plaintiff argues that she did not have transferrable skills that would allow her to perform

21  the semi-skilled clerk positions identified by the VE (general clerk, unit clerk (medical), license

22  clerk, and process server).  She explains that the VE failed to identify any acquired skills from

23  PRW that were transferrable to these positions, and that the ALJ made a formal finding that

24  Plaintiff did not have any transferrable skills.  AR 37.

25  First and foremost, the ALJ's determination of this issue is unclear and confusing.  The

26  ALJ explains that the VE found that Plaintiff had no transferrable skills outside of the specific

27  job arena.  AR 35, 769.  The ALJ accepted the VE's finding that Plaintiff could return to her

28  PRW as a student aide II/clerical worker.  AR 35.  He then states:

1    Additionally, the vocational expert found that with these conditions and limitations, she is
capable of making a vocational adjustment to other work, and identified other clerk
2    positions, including a blood donor unit specialist, DOT Code 245.367-014, which has a
light physical demand, and a SVP of 2 (unskilled). In the United States, there were
3    335,583 such jobs, and in California there were 43,408 such jobs.

4    AR 35.

5         Although the ALJ cites only the unskilled position of blood donor unit donor, the

6    numbers of available positions cited includes the semi-skilled, SVP-3 positions of general clerk,

7    unit clerk (medical), license clerk and process server. AR 769. Under SSA rulings and

8    regulations, a claimant must possess transferrable skills from previous work in order to perform

9    SVP-3 positions. SSR 00-04p; SSR 83-10 ("Ability to perform skilled or semiskilled work

10   depends on the presence of acquired skills which may be transferred to such work from past job

11   experience above the unskilled level or the presence of recently completed education which

12   allows for direct entry into skilled or semiskilled work."). Here, however, Plaintiff correctly

13   argues that neither the VE nor the ALJ identified any transferable skills that would allow Plaintiff

14   to make an adjustment to these positions. Indeed, in an alternative step five determination, the

15   ALJ found that Plaintiff did *not* have any transferable skills. AR 37. While there are certain

16   circumstances where the ALJ may rely on VE testimony that contradicts the DOT, such a finding

17   would not be appropriate where it was forbidden by the SSA regulations. *See eg., Johnson v.*

18   *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). The inherent inconsistency in the ALJ's alternate

19   findings only adds to the confusion.

20        The Court recognizes that remedying this deficiency may not alter the final determination

21   of disability. However, remand is necessary to remedy the overall sense of uncertainty in the

22   ALJ's step four and step five findings. On remand, the ALJ must identify transferrable skills to

23   support his finding or revise his determination.

24        *Blood Donor Unit Specialist*

25        Next, Plaintiff argues that the RFC, which limited Plaintiff to simple one-to-two step

26   tasks, is in conflict with the position of blood unit donor specialist. Plaintiff contends that the

27   position, while unskilled, has a reasoning level of 2. A level two reasoning indicates that the job

28   requires the person to be able to "[a]pply commonsense understanding to carry out detailed but

18

uninvolved written or oral instructions," and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Meissl v. Barnhart*, 403 F.Supp.2d 981, 982 (C.D. Cal. 2005); DOT, App. C, § III.

In opposition, Defendant cites cases holding that level two reasoning appears consistent with a claimant's RFC for simple, repetitive work. *See eg., Meissl*, 403 F.Supp.2d at 984. However, Plaintiff's RFC seems slightly more limiting than a limitation to simple, repetitive tasking.  The ALJ determined that Plaintiff could only perform simple one-to-two step tasks.  AR 35.  Indeed, as the Court in *Meissl* sets forth, level one reasoning only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." *Id.*, at 983.  Plaintiff's limitation certainly seems more in line with level one reasoning rather than level two, and at the very least, required some sort of inquiry from the ALJ to support his finding that Plaintiff could perform the job of blood donor unit specialist .

On remand, the ALJ must clarify whether Plaintiff's RFC is compatible with the position of blood unit specialist.

### Work Existing in Significant Numbers

Finally, Plaintiff contends that the VE erred by failing to break down the numbers of jobs for each occupational title and instead provided numbers lumping all of the positions together. Therefore, according to Plaintiff, one can only speculate as to the number of jobs available for a certain position.

Generally, the relevant number is the *total* number of positions available.  In this case, however, the VE's failure to specify the number of jobs available for each occupational title only adds to the lack of clarity in the ALJ's decision.  As discussed above, the ALJ cites the numbers of positions available for multiple titles, but then specifies only the blood donor unit position. AR 35, 37.  Again, while correcting this error may not result in a different outcome, correction is necessary before the Court can find that substantial evidence supports the ALJ's findings.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Maria D. Nunez and against Defendant Jo Anne B. Barnhart, Commissioner of Social Security.


    IT IS SO ORDERED.

    **Dated:**   **March 17, 2006**                           **/s/ Dennis L. Beck**
3b142a                                      UNITED STATES MAGISTRATE JUDGE

20